IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                     Cr. No. 20171-Ma

TIMMY KINNER,

   Defendant.

**POSITION OF DEFENDANT WITH RESPECT TO SENTENCING FACTORS
AND
SENTENCING MEMORANDUM**

   COMES NOW, the defendant, TIMMY KINNER, by and through his counsel, David M. Bell, and submits his position with respect to the sentencing factors pursuant to §6A1.2 of the United States Sentencing Commission Guidelines Manual. (Effective November 1, 2008).

   Mr. Kinner and his counsel have reviewed the presentence report together.

**THE SENTENCING HEARING**

   Pursuant to the Local Rules, this is to notify the Court that the defendant may call some witnesses at his sentencing hearing, but the hearing should not last any longer than one hour.

**OBJECTIONS TO THE PRESENTENCE REPORT**

   Mr. Kinner and his counsel have two objections to the presentence investigation report.

**Paragraph 17**

   Mr. Kinner objects to paragraph 17 of the presentence report, Victim Related Adjustments, in which the probation officer applied a two level enhancement for "restraint of victim" pursuant to

§ 3A1.3. In the case at bar, no victim was physically restrained.

§ 3A1.3 states, "If a victim was physically restrained in the course of the offense, increase by two levels." Application Note 1 refers to the definition contained in the Commentary to § 1B1.1, which under Application Note 1(K) states, "'Physically restrained' means the forcible restraint of the victim such as being tied, bound, or locked up."

This Court should find that there was no victim in this case that could have been physically restrained. Mr. Kinner was charged with possession of a firearm by a convicted felon pursuant to § 922(g); in paragraph 10 of the report, the probation officer concedes that the victim of this offense is "society." Indeed, if this court reviews the other "Victim-Related Adjustments" contained in Chapter Three, Part A of the Sentencing Guidelines, the victims specifically referred to in each adjustment are the actual victim of each of the offenses charged. This Court should not find that the Guidelines are to be interpreted differently and that the victim referred to in § 3A1.3 is not the victim of the actual offense.

This Court should also find that there was no action in this case that qualifies as restraint under the Guideline definitions. The probation officer would apparently argue that, under § 1B1.1, Note 1(K), the individuals inside the home in question were "locked up," because there is no allegation that any person was tied or bound. However, this Court should find that when a person enters a room and locks the door, that does not qualify as being "locked up": there must be something more in order for restraint to occur.

Finally, this Court should find that the individuals in the house in this case were not restrained because of the factual scenario. While investigating the case, counsel for defendant sent his investigator to speak with Mr. Cleveland Jackson, Jr., one of the individuals in the house where

Mr. Kinner was arrested. Mr. Jackson, Jr. Stated that he knew Mr. Kinner as the nephew of one of his neighbors. Mr. Jackson, Jr., went on to say that while Mr. Kinner had closed and locked the front door, that he had never threatened anyone, that he had never told them that they could not leave, and that before anyone could get up and unlock the door and leave, officers of the Memphis Police Department broke the door in.

This Court should find that the two level enhancement pursuant to § 3A1.3 does not apply. As a result, Mr. Kinner's Total Offense Level should be 17 rather than 19.

**Paragraphs 25 and 26**

Mr. Kinner objects to paragraphs 25 and 26, which allocate two criminal history points for both Mr. Kinner's offenses of Disorderly Conduct dated September 21, 2002, and Aggravated Assault dated October 17, 2002, resulting in four criminal history points being counted toward Mr. Kinner's offense level. According to Juvenile Court records, Mr. Kinner, age 14, was transported to Juvenile Court on September 21, 2002 on the charge of disorderly conduct because Timmy was smoking cigarettes and being unruly toward his father and grandmother. The case officer, Martha Rogers, recommended supervised probation in the custody of his father. On October 17, 2002, Mr. Kinner was transported to Juvenile Court on the charge of aggravated assault because Timmy's cousin, Walter, had attempted to discipline him, had started choking him, and so Timmy retrieved a knife and confronted Walter with that knife, and Walter was cut on the hands. As a result of both offenses, Timmy Kinner was placed in the custody of the youth services bureau. The punishment was imposed for the two offenses combined, so that punishment should not be counted twice in determining criminal history. As a result, Mr. Kinner's total criminal history points should total nine, which would mean that Mr. Kinner's criminal history category would be IV rather than V.

This Court should find that neither the §3A1.3 enhancement should apply, nor should the extra two criminal history points be counted. Mr. Kinner's advisory sentencing guideline range should be 37 - 46 months.

**SENTENCING MEMORANDUM**

Timmy Kinner is 21 years old, single and homeless. Mr. Kinner has never been married and has no children. Mr. Kinner last attended Hamilton High School in March of 2004 at the age of 16, and did not graduate. Mr. Kinner has been previously employed as a laborer with a landscaping company and at Church's Chicken on Perkins Road in Memphis.

Congress has stated that "the court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of 18 U.S.C. §3553. The Court is to consider the nature and circumstances of the offense. Here, the offense involves the possession of a Springfield Armory .40 caliber pistol, which Mr. Kinner has admitted to and accepted responsibility for.

The Court is to consider the history and circumstances of the defendant. The history and circumstances of Mr. Kinner reveal a very hard upbringing with multiple broken homes and foster care. Timmy Kinner was born to Timmy Kinner, Sr., and Deborah Hull, also known as Deborah Starks, on January 11, 1988. On December 11, 1990, the State of Tennessee Department of Human Services found Timmy and his brother, Darryl, and sister, Jessica, to be dependent and neglected, after being found living in a storage house that did not have a bathroom or utilities - the arrest ticket called it a "storage shed." The report alleges that Timmy's mother was addicted to drugs and would leave the children for days at a time; at the time of the report, her whereabouts were unknown. The children were then placed in the custody of their paternal aunt, Betty Kinner, where Timmy said he

4

and his siblings lived with Betty, father Timmy, Sr., and his Grandmother, Retha.

Over the next several years, a pattern of contacts with the Juvenile Court system developed. Mr. Kinner and his brother were arrested for allegedly breaking into someone's house with some other boys, and Timmy was the subject of frequent discipline problems at the home and at school, including disorderly conduct, assault, and a culmination of events that led to Mr. Kinner being charged with an aggravated assault on his cousin, Betty Kinner's son Walter, which resulted in Mr. Kinner being placed in the youth services bureau for some time. It is unclear whether it was in this custody, family custody or later foster care that Mr. Kinner was abused. After leaving Hamilton High School and being arrested for multiple charges of truancy, Mr. Kinner left his aunt Betty's house and went to a safe house, Family Link. Because his aunt Betty refused to come pick him up, Timmy was again found to be dependent and neglected on April 15, 2005, and was left in the custody of the state. Betty Kinner told the Juvenile Court officer that she did not want Timmy anymore; Timmy stated that both his mother and father were on drugs, and that after the aggravated assault charge on cousin Walter, Walter had continuously made his life difficult and that was why he left. After that, Timmy was in state custody, with his guardian listed as Retha Kinner, his grandmother.

It should also be noted that Mr. Kinner has abused marijuana and alcohol at least occasionally in the past. Mr. Kinner told the probation officer that he was never a regular user of marijuana, but had consumed in 2008. Adult and juvenile records point to one conviction for possession of marijuana and at least two incidents as a juvenile where Mr. Kinner committed offenses while intoxicated on marijuana.

Mr. Kinner was assessed while in state custody and found to have an IQ of 80 and to fall in

the low average range of intellectual functioning. This presumably does not interfere with Mr. Kinner's ability to work. Mr. Kinner was previously employed as a laborer with a landscaping company prior to this charge, and worked at Church's Chicken for a short time. Of course, Mr. Kinner's work history is also somewhat limited because he is only 21 years old. As Mr. Kinner told the state when he left his aunt's house, he wanted to get into the Job Corps Program so he could start working.

In this case, considering the circumstances of the offense, the history and characteristics of the defendant, there is not a need to impose a further sentence of confinement. This Court should note that the underlying state case, Shelby County General Sessions Booking number 08103866, saw Mr. Kinner arrested on February 3, 2008, held to the action of the Shelby County Grand Jury on April 2, 2008, indicted under Shelby County Criminal Court Indictment # 08-03109, and was dismissed on June 19, 2008, after being indicted in federal court on May 20, 2008. That means that Mr. Sharpe has actually served over thirteen months of incarceration already. Hence, the defendant moves the Court to impose a subsequent sentence of forty-eight (48) months of probation. This defendant has had a life that has been difficult and yet could still be saved. As Mr. Kinner's grandmother, Retha, told the probation officer, Timmy has admitted that he made a mistake in this instance, but has "learned a lesson." He has expressed a desire to work, and to get job training, and this Court should order that Mr. Kinner submit to job training and GED classes so that he can become a productive member of society. In addition, this Court should heed Retha Kinner's recommendation that Mr. Kinner receive anger management training as well, and Mr. Kinner's history of drug use should compel this Court to order substance abuse treatment.

The advisory sentencing range provides for a range of 37 to 46 months of incarceration, or

57 to 71 months if this Court follows the recommendations of the probation officer.  However, the facts of this case and the history and circumstances of the defendant warrant a variance from the advisory range.  Therefore, the defense respectfully requests this Honorable Court to sentence Timmy Kinner to a total sentence of thirteen (13) months incarceration, with credit for time already served, and forty eight (48) months of intensely supervised probation.  This Court should remember that Timmy Kinner is only twenty one years old, and his exposure to incarceration at this point is limited to the thirteen months he has been in custody on this matter, a short stint at the Shelby County Correctional Center, ten days in Arkansas, and his youth services bureau days as a juvenile.  This Court should be compelled to attempt to fashion a program of supervision that can save a young man while he still can be saved.

      Wherefore, premises considered, the defendant prays for the requested relief.

      Respectfully submitted,

Stephen B. Shankman
FEDERAL DEFENDER

s/ DAVID M. BELL
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(901) 544-3895

**CERTIFICATE OF SERVICE**

This is to certify that a true copy of the foregoing POSITION OF DEFENDANT WITH RESPECT TO SENTENCING FACTORS has been forwarded by electronic means via the Court's electronic filing system to Christopher Cotten, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103.

This 2nd day of March, 2009.

s/ DAVID M. BELL
Assistant Federal Defender
